# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

MORGANA RAVENWOOD,

                                  Plaintiff,

-vs-                                DECISION and ORDER

RICHARD F. DAINES, Commissioner of the New      06-CV-6355-CJS
York State Department of Health, et al.

                                  Defendant.

---

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Alecia Elston, Esq.<br>Segar & Sciortino<br>400 Meridian Centre, Suite 320<br>Rochester, NY 14618 |
| For Defendant: | Emil J. Bove, Jr., A. A.G.<br>New York State Office of the Attorney General<br>144 Exchange Blvd., Suite 200<br>Rochester, NY 14614 |

## INTRODUCTION

**Siragusa, J.** Plaintiff is a Medicaid recipient who claims that New York State's refusal to reimburse her potential expenses for gender reassignment surgery and electrolysis violates her constitutional rights. Defendant Richard Daines, Commissioner of New York State's Department of Health, has moved for judgment on the pleadings pursuant to Rule 12(c). For reasons discussed below, Defendant's motion is granted.

## BACKGROUND

Plaintiff Morgana Ravenwood ("Plaintiff") is a Medicaid recipient, and resides in Rochester, New York. (Am. Compl. ¶ 43.) Plaintiff has received Medicaid since 1989. *Id*. Supplemental Security Income and food stamps are her only sources of income. *Id*. Although born a male, Plaintiff was diagnosed with gender identity disorder ("GID") in 1967 when she was five years-old, and "has identified as a woman since 1967." (*Id*. ¶¶ 45-47.) Since 1998 New York State's Medicaid program has paid for Plaintiff's hormonal treatment, voice therapy, water pills, medications related to gender reassignment, and mental health care to treat her GID. (*Id*. ¶ 51.) In 2001, after more than three decades of living as a woman, Plaintiff legally assumed a female name: Morgana Ravenwood. (*Id*. ¶ 53.) Plaintiff asserts that she is medically stable, yet she also claims that the procedures she seeks by this lawsuit are medically necessary to alleviate her suffering. (*Id*. ¶¶ 59, 57, 55.) Plaintiff contends that her physicians maintain that electrolysis and gender reassignment surgery are medically necessary. (*Id*. ¶¶ 57-58.) Plaintiff attached an unsworn letter from her doctor to the Complaint. This letter states in its pertinent part: "sexual reassignment surgery will greatly enhance her overall mental health and well-being."

Plaintiff demands that Medicaid pay for both electrolysis to remove her facial hair, and for sex reassignment surgery. (*Id*. ¶¶ 54-55.) Plaintiff alleges that it is highly unfair that the New York State Department of Health ("DOH") does not pay for these procedures. The DOH's Medicaid statute provides that "[p]ayment is not available for the care, services, drugs for the purpose of gender reassignment (also known as transsexual surgery) or any

care, services, drugs or supplies intended to promote such treatment." 18 N.Y.C.R.R. § 505.2(l).

Pursuant to this regulation, the DOH has denied Plaintiff further Medicaid coverage for gender reassignment-related treatments. In response, Plaintiff has filed the subject suit against Richard F. Daines, Commissioner of the New York State Department of Health, ("Commissioner Daines") in his official capacity.

Plaintiff asserts that § 505.2(l) conflicts with federal law. Her claims are brought under 42 U.S.C. § 1983 and the Fourteenth Amendment. She asks that this Court issue a permanent injunction ordering Commissioner Daines to provide her with all care, services, drugs, and supplies prescribed by her physicians for the purpose of gender reassignment, and for this Court to issue another injunction ordering him to rescind[1] 18 N.Y.C.R.R. § 505.2(l). (Am. Compl. ¶ (a)(i).)[2]

## ANALYSIS

**Rule 12(c) Standard**

When "deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052, (2000). The U.S. Supreme Court standard for a 12(b)(6) motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

---

[1]The verb 'repeal' might have been a better word for Plaintiff to have used in this case.

[2]Plaintiff's Amended Complaint changes from using paragraph numbers to paragraph letters after "wherefore," furthermore the document is not paginated.

> provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Under *Twombly*, the relevant question is whether, assuming the factual allegations are true, the plaintiff has stated a ground for relief that is plausible." *Ashcroft v. Iqbal*, ___ U.S. ___,129 S. Ct. 1937, 1959 (2009).

A district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette*, 192 F.3d at 56. Under Rule 12(c), the Court does not need to "accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal citations and quotations omitted).

### *Casillas v. Daines*

The Southern District of New York recently dismissed a case—*Casillas v. Daines*, 580 F. Supp.2d 235 (S.D.N.Y. 2008)—on a Rule 12(c) motion that involved *the same defendant*, *the same legal issues*, and facts which are almost identical to those before the Court. In granting Commissioner Daines's 12(c) motion, the Southern District held that he did not violate a transsexual's right to equal protection, when, pursuant to 18 N.Y.C.R.R. § 505.2(l), he refused to reimburse her for sex reassignment surgery. *Id.* Plaintiff distinguishes her case from *Casillas* on the factual grounds that Medicaid has paid for Plaintiff's hormonal treatment, voice therapy, water pills, medications related to gender reassignment, and mental health care, whereas the plaintiff in *Casillas* only received

hormonal treatment from Medicaid. (Def.'s memo 2.)³ Plaintiff does not, however, explain how these facts change the legal analysis.

Plaintiff not only asserts the same legal claims as in *Casillas* against the same defendant, but Plaintiff has also adopted and incorporated Terri Casillas's complaint and Casillas's memorandum against Commissioner Daines's 12(c) motion.⁴ *Id.* Since Plaintiff has raised the same legal issues against the same defendant, this Court finds that the legal analysis from the *Casillas* case is similarly applicable. Although normally this Court would be disinclined to quote so extensively from another decision as it does below, it is difficult to improve upon Judge Castel's thoughtful and thorough explanation and analysis of this area of constitutional law, with which this Court concurs. With respect to the first two § 1983 causes of action, Judge Castel explained:

> **IV.⁵ Standard Governing a § 1983 Action Seeking Enforcement of Rights Protected By Federal Statutes**
>
> ⁶The first three claims in the complaint are pled under § 1983, which provides in relevant part:
>
>> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

---

³The Court also notes that the plaintiff in *Casillas* did not seek electrolysis.

⁴ Plaintiff's adoption and incorporation of the *Casillas* complaint memorandum is so thorough that she refers to the Southern District as "this district" and "this court." (Def.'s memo 4, 10.) Furthermore, Plaintiff's references to Defendant's memorandum make no sense, since the page numbers, and claims Plaintiff cites do not correspond to what the Defendant has written.

⁵These Roman numerals are original to *Casillas*.

⁶ Paragraphs are purposefully indented, see BB 5.1(a)(iii).

Constitution and laws, shall be liable to the party injured in an action at law[, suit in equity, or other proper proceeding for redress ....][7]

42 U.S.C. § 1983 (2008). Plaintiff alleges that Commissioner Daines is a person who acted under color of a state regulation, 18 N.Y.C.R.R. § 505.2(l), to deprive plaintiff of rights secured by three provisions of the federal Medicaid statute. 42 U.S.C. §§ 1396(a)(10)(A), 1396a(a)(10)(B)(i) and 1396a(a)(17).

Since 1980, it has been settled that § 1983 provides a remedy for a violation of rights protected by a federal statute. *Maine v. Thiboutot*, 448 U.S. 1 (1980) (claim for denial of welfare benefits under the Social Security Act). But not all violations of a federal statute by a state official are actionable under § 1983; plaintiff must show that a right secured by a federal statute has been violated. *See Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989). There is a three-factor test for determining whether a statute treats [a] right that is capable of enforcement through a § 1983 action. *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997). *See Loyal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 136, 149-50 (2d Cir. 2006).

"First, Congress must have intended that the provision in question benefit the plaintiff." *Blessing*, 520 U.S. at 340. The Supreme Court clarified the meaning of this first element in *Gonzaga University v. Doe*, 536 U.S. 273 (2002). It expressly "reject[ed] the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Id.* at 283. "[I]t is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under that section." *Id.*; *NextG Networks of NY, Inc. v. City of New York*, 513 F.3d 49, 52 (2d Cir. 2008). The inquiry under the first factor overlaps with that for determining whether a private right of action may be implied under a statute in that both inquiries require a showing that Congress intended to create a federal right. *Gonzaga University*, 536 U.S. at 283. For a statute to create a right enforceable either by way of private right of action or under § 1983, "its text must be 'phrased in terms of the persons benefited.'" *Id.* at 284 (quoting *Cannon v. University of Chicago*, 441 U.S. 677(1979)).*See also Rabin v. Wilson-Coker*, 362 F.3d 190, 200 (2d Cir. 2004).

Under the second *Blessing* factor, "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous'

---

[7] Ravenwood, like Casillas, demands equitable relief, so the additional statutory language is relevant.

-6-

that its enforcement would strain judicial competence" 520 U.S. at 340-41. This standard would be satisfied where "protections offered by the statute are clear and specific." *Collier v. Dickinson*, 477 F.3d 1306, 1310 (11th Cir. 2007). It would also be met if, for example, "[a] court can readily determine whether a state is fulfilling these statutory obligations by looking to sources such as a state's Medicaid plan, agency records and documents, and the testimony of Medicaid recipients and providers." *Ball v. Rodgers*, 492 F.3d 1094, 1115 (9th Cir. 2007).

The third *Blessing* factor would be met if "the statute ... unambiguously impose[s] a binding obligation on the States." 520 U.S. at 341. "In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Id.*

"Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 284; *see also Rabin v. Wilson-Coker*, 362 F.3d at 201. But the inquiry does not end there. The "rebuttable presumption" in favor of the plaintiff may be overcome by demonstrating that Congress expressly or impliedly foreclosed a remedy under § 1983. *Blessing*, 520 U.S. at 341. Congress impliedly forecloses a remedy under § 1983 "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement." *Id.*

Each of the three statutory provisions is pled in separate claims for relief and will be separately addressed. Preliminarily, this Court notes that other Circuits, post-*Gonzaga*, have found the existence of some right enforceable by way of § 1983 under § 1396a(a)(10)(A). *See Watson v. Weeks*, 436 F.3d 1152, 1161 (9th Cir. 2006) (right to be cared for in a nursing facility or receive an equivalent level of care in community settings for individuals with serious medical problems and cognitive limitations); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180 (3d Cir. 2004) (right to medical assistance for intermediate care facility services); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581 (5th Cir. 2004) (right to early and periodic screening, diagnostic, and treatment services).FN2 One district court has found, under § 1396a(a)(10)(B), an unambiguously conferred right upon residents of El Paso to receive the same level of service as recipients in other parts of the state. *Equal Access for El Paso, Inc. v. Hawkins*, 428 F. Supp. 2d 585 (W.D. Tex. 2006), *rev'd on other grounds*, 509 F.3d 697 (5th Cir. 2007); *see also Michelle P. ex rel. Deisenroth v. Holsinger*, 356 F. Supp. 2d 763, 768 (E.D. Ky. 2005) (right under § 1396a(a)(10)(B) to receive community based residential Medical Assistance services). The Ninth Circuit has found that § 1396a(a)(17) does not unambiguously confer a right upon persons with serious medical problems and cognitive limitations to the same care in a nursing facility as in a community setting. *Watson v. Weeks*, 436 F.3d at 1162. One judge of this [Circuit] has found that § 1396a(a)(17)

conferred a right upon a morbidly obese individual to a seat-lift chair. *Bordello v. Novello*, No. 02-CV-7946, Order, Docket # 24, (KMW) (S.D.N.Y. Mar. 24, 2004).

FN2. Several pre-*Gonzaga* courts have also found enforceable rights under §1396a(a)(10). *See Westside Mothers v. Haveman*, 289 F.3d 852 (6th Cir. 2002); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472 (8th Cir. 2002); *Miller v. Whitburn*, 10 F.3d 1315 (7th Cir. 1993).

Whether a statute unambiguously confers a right is not a binary question. The statute may confer a right of some type upon some class of persons without conferring the particular right asserted by the plaintiff in suit. "It [is] incumbent upon [the party] to identify with particularity the rights they claimed, since it is impossible to determine whether [the statute], as an undifferentiated whole, gives rise to undefined 'rights.' " *Blessing*, 520 U.S. at 342. "Only when the complaint is broken into manageable analytic bites can a court ascertain whether each separate claim satisfies the various criteria we have set forth for determining whether a federal statute creates rights." *Id.*

In assessing whether the *Blessing* and *Gonzaga* standards are met, plaintiff urges that this Court take account of certain regulations, 42 C.F.R. §§ 440.210, 440.230(c) and 440.240(b), that implement and interpret the three statutory sections. The defendant similarly asks the Court to take account of a regulation which permits state plans to place "appropriate limits" on services. 42 C.F.R. § 440.230(d). Each of the regulations were promulgated pursuant to a broad authority to "make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter." 42 U.S.C. § 1302(a).

Section 1983 provides a remedy to enforce rights "secured by the Constitution and laws" of the United States. Whether a federal regulation may give rise to enforceable rights under §1983 has not been decided in this Circuit. *See Rodriguez v. City of New York*, 197 F.3d 611, 617 (2d Cir. 1999) (assuming *arguendo* that a right may be founded on a Medicaid regulation); *King v. Town of Hempstead*, 161 F.3d 112, 115 (2d Cir. 1998). *See also DaJour B. v. City of New York*, No. 00-CV-2044 (JGK), 2001 WL 830674, at *8 n. 7 (S.D.N.Y. July 23, 2001).

Plaintiff does not rely upon any regulation as the source of rights she seeks to enforce. Rather, she asserts that the federal regulations are important in discerning the meaning of the statute. "[W]hen an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations." *Federal*

*Exp. Corp. v. Holowecki*, ___ U.S.___, 128 S.Ct. 1147, 1154 (2008) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 843-845 (1984)). The regulations will be considered as valuable tools in interpreting the statutory provisions.

**V. Application of Gonzaga and Blessing Factors to the Statutes at Issue**

**A. First Cause of Action: Rights Purportedly Secured by §1396a(a)(10)(A)**

First Cause of Action, addressed solely to § 1396a(a)(10)(A), asserts that the state Commissioner is "refusing to provide required Medicaid services to Plaintiff ..." (Compl. ¶ [74].)[8] The services are elsewhere defined as "feminizing hormones and vaginoplasty (removal of the penis and creation of a vagina) with orchiectomy (removal of the testes)." (Compl. ¶ 57.)[9] Thus, the right to receive Medicaid payment for these services is the right she asserts is unambiguously conferred by § 1396a(a)(10)(A).

Subdivision 10(A) of § 1396a(a) mandates that a state's Medicaid plan provide "for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17) and (21) of § 1396d(a) of this title" to all eligible individuals. The plaintiff alleges that she is "categorically needy" and is, thus, an eligible person, a point on which there does not seem to be a dispute. The referenced subsections of § 1396d identify broad categories of coverage. For example, subdivision 1 covers "inpatient hospital services (other than services in an institution for mental diseases)," subdivision 2(A) covers "outpatient hospital services," subdivision 3 covers "other laboratory and X-ray services" subdivision 17 covers midwife services and subdivision 21 covers services rendered by nurse-practitioners. Pointedly, the subdivisions in conjunction with § 1396a(a)(10)(A) do not mandate that a particular level or type of care must be provided.

As an aid to interpretation of § 1396a(a)(10)(A), plaintiff relies upon § 440.210 of the regulations. (Compl. ¶ [74].) Under § 440.210(a)(1), a state plan must provide "categorically needy recipients" with those "services defined in § 440.10 though §§ 440.50 9 [and] 440.70 ...." For example, § 440.10(a) defines "inpatient hospital services" as services that:

---

[8] Plaintiff's adoption and incorporation of Terri Casillas's papers is so complete that only *some* of the paragraph numbers from the Complaint need to be changed.

[9] The paragraph number *and* language of Ravenwood's Complaint is the same as Casillas's in this case.

(1) Are ordinarily furnished in a hospital for the care and treatment of inpatients;

(2) Are furnished under the direction of a physician or dentist; and

(3) Are furnished in an [appropriate and approved] institution
....

42 C.F.R. § 440.210(a).

Plaintiff argues that the regulation demonstrates that the statute was intended to confer an individual right upon all eligible individuals to receive all inpatient services, including gender reassignment surgeries, at an appropriate institution, provided that those services are ordinarily furnished in a hospital and are under the direction of a medical doctor.

But it is settled that a state's Medicaid plan need not provide reimbursement for all medical procedures of a categorically eligible individual. *See Beal v. Doe*, 432 U.S. 438, 444 (1977) (State plan need not provide coverage for non-therapeutic abortions). "[N]othing in the statute suggests that participating states are required to fund every medical procedure that falls within the delineated categories of medical care."

Consistent with the foregoing, § 440.230(d) of the Secretary's regulations provide that a state plan may contain broad exclusions. Specifically, the regulation provides that "[t]he [state] agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures" 42 C.F.R. § 440.230(d). Thus, in the Secretary's view, § 1396a(a), permits a state plan to place "appropriate limits" upon a "service" regardless of an individual medical doctor's view of the appropriateness of the categorical limitation.

The inclusion of "utilization control procedures" as an express basis for "appropriate limits" has several important implications for this case. It captures concepts that do not relate to the care of any one particular patient but looks to actual or expected utilization over a broader population. This focus is inconsistent with a right conferred upon an individual or class of individuals. The "right" conferred in § 1396a(a)(10)(A) is not unambiguously conferred upon any individual or class of individuals because it is subject to "appropriate limits" which are based upon state-wide resources and patterns of usage.

The plaintiff reads § 1396a(a)(10) in absolute terms as requiring reimbursement for all inpatient services at a qualifying facility which are

deemed necessary by a physician. But that interpretation of the statute is inconsistent with the regulation adopted by the Secretary which permits the states to place "appropriate limits" based upon a non-exhaustive listing of "criteria." "[R]egulations, if valid and reasonable, authoritatively construe the statute itself ...." *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001). Plaintiff makes no challenge to § 440.230(d) as invalid or unreasonable. Because § 1396a(a), as authoritatively construed, allows for categorical limits on treatments, it follows that subdivision 10 of the statute cannot be said to have unambiguously conferred a right upon this plaintiff to a particular service or treatment.

The existence of the broad carve-out in § 440.230(d) raises another fundamental problem in the *Blessing* analysis. Were this Court to conclude that a right is unambiguously conferred on individuals or a class of individuals, the claim would fail on the second element of *Blessing*: "the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." 520 U.S. at 340-41.

While district courts are generally competent to adjudicate claims of medical necessity arising in many contexts, the same may not be said as to the loose standard of utilization control procedures! Encompassed in the phrase is the concept that there are a limited number of hospital beds and a limited number of physicians and nurses within a state and that the use of these resources may be controlled. But the phrase is susceptible to multiple plausible interpretations and lacks a fixed meaning. In terms of the second *Blessing* element, it is a "vague and amorphous" concept, the application of which would, therefore, strain judicial competence. This is not an instance where a court could "readily determine whether a state is fulfilling these statutory obligations by looking to sources such as a state's Medicaid plan, agency records and documents, and the testimony of Medicaid recipients and providers." *Ball v. Rodgers*, 492 F.3d at 1115. The protections could hardly be characterized as "clear and specific." *Collier v. Dickinson*, 477 F.3d at 1310.

Further, the regulation is not limited to "medical necessity" or "utilization control procedures" and a state may also employ other "such criteria" in framing "appropriate limits." This enhances the vagueness problem.FN3

FN3. In *Golden State Transit Corp.*, the Court looked to regulations promulgated under the statute and, based upon those regulations, concluded that the statute did not create a vague and amorphous standard. 493 U.S. at 111-12. Here, an examination of the accompanying regulations leads to the opposite result.

-11-

In summary, subdivision 10 (A) of § 1396a(a) does not unambiguously confer the right that this plaintiff asserts. Alternatively, enforcement of the right would require the application of vague and amorphous standards and, therefore, would strain judicial competence. *Blessing*, 520 U.S. at 340-41. It is not necessary to reach the other elements under *Blessing*. *Id.*

**B. Second Cause of Action: Rights Purportedly Secured by § 1396a(a)(10)(B)(I)**

Plaintiff asserts that § 1396a(a)(10)(B)(i) confers a right to the relief sought in this action. The section provides as follows:

> (B) that the medical assistance made available to any individual described in subparagraph (A)—
>
> (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
>
> (ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A);

42 U.S.C. § 1396a(a)(10)(B)(i) (2008). Plaintiff also urges that 42 C.F.R. § 440.240(b) sheds important light on the meaning of § 1396a(a)(10)(B)(i). (Compl. ¶ [74]). The regulation provides as follows:

> The plan must provide that the services available to any individual in the following groups are equal in amount, duration, and scope for all recipients within the group:
>
> (1) The categorically needy.
>
> (2) A covered medically needy group.

42 C.F.R. § 440.240(b) (2008). Section 1396a(a)(10)(B) has been interpreted to mean that "if a state elects to provide Medicaid to the medically needy, it must also provide it to the categorically needy and that it may not provide more assistance to the former group than to the latter ...." *Rodriguez v. City of New York*, 197 F.3d at 615. Also, "states may not provide benefits to some categorically needy individuals but not to others." *Id.*

Plaintiff reads more than this into the statute and regulation. She interprets it to mean that if an inpatient treatment or service is made available to a group of recipients with one diagnosis, then that treatments or services

-12-

must be made available to all recipients with other diagnoses so long as they are directed by the individuals' physicians. Plaintiff argues that because an orchiectomy is an accepted and reimbursable treatment for testicular cancer, then it is necessarily reimbursable for this plaintiff upon a determination by her physician that it is a necessary treatment for a diagnosis of GID. Similarly, because a mastectomy is an indicated and reimbursable treatment for breast cancer, then a female-to-male transsexual with a diagnosis of GID would be entitled to reimbursement for the same treatment.[10] In Plaintiff's view, any treatment that is reimbursable for one diagnosis would be a reimbursable treatment for a different diagnosis if it were deemed by the patient's doctor to be a medical necessity.FN4 Plaintiff has not cited to an authoritative interpretation by the Secretary or his designee supporting her argument.

FN4. Taking plaintiff's interpretation to an extreme, if rhinoplasty were reimbursable for a victim of a trauma such as an automobile accident, then it also would be reimbursable to a person diagnosed with major depressive disorder attributable in substantial part to having been born with a misshapen but otherwise healthy nose, provided the patient's doctor deemed the surgery to be medically necessary....

In *Rodriguez*, the Court rejected a theory that because the state had provided funding for one type of service, there was an enforceable right under § 1396a(a)(10)(B) to a comparable, though not identical, type of service:

> Appellees' discrimination claim is entirely different from the types of discrimination described above. They do not contend that the medically needy receive coverage in New York not afforded to the categorically needy or that some distinction is drawn among the categorically needy. Instead, they claim that, because safety monitoring is "comparable" to the personal care services already provided by New York, the failure to provide such monitoring violates § 1396a(a)(10)(B).... Appellees attempt to graft a new requirement on this Section: If two different benefits are "comparable" and one is provided, the other must be as well. Thus, they conclude, once a state provides assistance for any personal-service activity comparable to safety monitoring, it must also provide safety monitoring.

---

[10] Ravenwood also raised this issue at oral argument (3/5/09 Tr. 4:35 p.m.).

> *Id.* at 615-16, 197 F.3d 611 (citation omitted).
>
> The *Rodriguez* Court went on to describe the "comparable" concept urged by the plaintiff in that case as "an elastic concept" that would provide a disincentive to providing optional services that later may be found "comparable" with some other service. 197 F.3d at 616. A similar disincentive would be created by the rule urged in this case because the state would have to consider other possible diagnoses for which the treatment might be prescribed before deciding whether to make it available for any single condition.

*Casillas*, 580 F. Supp. 2d at 239-45.

The Second Circuit also held in *Rodriguez* that "[s]ection 1396a(a)(10)(B) does not require a state to fund a benefit that it currently does not provide to anyone. It properly applies only in situations where the same benefit is funded for some recipients but not for others." 197 F.3d at 616. Plaintiff has not directed the Court to any examples of where New York State has provided Medicaid reimbursement for a sex reassignment surgery.

At oral argument, Plaintiff attempted to distinguish *Rodriguez* on the grounds that the procedures in *Rodriguez* were merely comparable, whereas here the procedures are identical.[11] Plaintiff argues that since Medicaid would reimburse someone for each procedure involved in sex reassignment surgery if performed individually,[12] then it should also pay for the concomitance of procedures she seeks. *Id.* This argument relies on Plaintiff's contention that diagnosis is irrelevant to treatment. In that regard, Plaintiff argues that if a treatment is given for one

---

[11] 3/5/09 Tr. 4:42 p.m.

[12] *E.g.*, Medicaid would pay for an orchiectomy (removal of the testicles) if a patient had testicular cancer.

diagnosis, then it must be given for *any* diagnosis, and discrimination on the basis of medical diagnosis is constitutionally irrational.[13] This assertion has the same logical fallacy discussed in Judge Castel's rhinoplasty hypothetical. *Casillas*, 580 F. Supp. 2d at 244, n. 4.

    Further, Plaintiff challenges the reasoning in *Casillas* that:

> If Congress had intended to compel a state to provide a treatment for all diagnoses if the treatment were provided for any diagnosis, one would have expected it to have done so in clear language. *Cf. Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) (Congress does not "hide elephants in mouseholes").

*Id.* at 244. Plaintiff maintains that there are many "unintended consequences" when any piece of legislation is drafted, and thus she contends that Judge Castel was wrong, when he made this conclusion.[14] Plaintiff asserts that one of the unintended consequences Congress allows under § 1396a(a)(10)(B)(i) is that diagnosis and treatment cannot be linked by a state's Medicaid regulations. Plaintiff claims that, since Congress did not clearly state that treatment should be limited to diagnosis, then all treatments must be available for all diagnoses. Plaintiff's contention, however, ignores an underlying assumption of medicine: that treatment is limited to diagnosis. The Court declines to take Plaintiff's expansive view of treatment. Rather the Court agrees with *Casillas* that:

> Section 1396a(a)(10)(B)(i) does not unambiguously confer a right of the nature claimed by plaintiff upon her or upon a class of persons of which she is a member.

---

[13]Tr. at 4:44 p.m.

[14]Tr. 4:45 p.m.

> The discussion and analysis of the state's lawful right under § 440.230(d) to place "appropriate limits" for "such criteria" as "medical necessity" or "utilization control procedures" applies with equal force to § 1396a(a)(10)(B) (i) and further supports the conclusion that neither the first nor second elements of *Blessing* are met.

*Casillas*, 580 F. Supp. 2d at 245.

The Court now turns to Judge Castel's analysis of the third § 1983 cause of action:

> **C. Third Cause of Action: Rights Purportedly Secured by § 1396a(a)(17)**
>
> Section 1396a(a)(17), a provision of considerable length, requires a state to develop "reasonable standards" for its plan. "This language confers broad discretion on the states to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal v. Doe*, 432 U.S. at 444.
>
> [15]... The statute, given its plain meaning, imposes an obligation upon a participating state to develop a reasonable plan. Subdivision (a)(17) places several specific requirements on the contents of the plan. There is no language which could be reasonably construed as unambiguously conferring the right which plaintiff asserts.FN5
>
> FN5. "The mere fact that all the Medicaid laws are embedded within the requirements for a state plan does not, by itself, make all of the Medicaid provisions into ones stating a mere institutional policy or practice rather than creating an individual right." *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 74 (1st Cir. 2005) (interpreting § 1320a-2). *See also Ball v. Rodgers*, 492 F.3d 1094, 1111 (9th Cir. 2007) (discussing the "*Suter* fix").
>
> Plaintiff also urges that the statute be read in conjunction with 42 C.F.R. § 440.230, a regulation that provides as follows:
>
> (a) The plan must specify the amount, duration, and scope of each service that it provides for—
>
> (1) The categorically needy; and

---

[15]Apparently an ellipsis at the start of a paragraph is correct if the first part of the paragraph has been removed. BB 5.1(a)(iii).

> (2) Each covered group of medically needy.
>
> (b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.
>
> (c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.FN6
>
> FN6. Like Russian stacking dolls, § 440.210, in turn, refers to services provided pursuant to §§ 440.10 through 440.50, 440.70, 440.165 and 440.166. The referenced sections speak in terms of broad categories of health services, such as inpatient and outpatient hospital services, and do not speak to any surgical procedure relevant to this case.
>
> (d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures.
>
> On its face, subsection (b) would require a plan to provide that a patient hospitalized, for example, with a diagnosis of pneumonia receive treatment for that condition that was "sufficient in amount, duration, and scope to reasonably achieve its purpose." Subsection (c) would appear to prohibit, among other things, a plan from treating less favorably a patient with pneumonia with an accompanying diagnosis of HIV-AIDS than one with pneumonia without the accompanying diagnosis of HIV-AIDS.
>
> But subsections (b) and (c) of § 440.230 must be read in conjunction with subsection (d), discussed at length above, which allows "appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." Subsection (d) relates to the entirety of § 1396a(a) including subsection (17). For the reasons stated, the existence of the carve-out authority precludes a finding that the right that this plaintiff invokes is unambiguously conferred by the statute. It also would be a vague and amorphous standard for the reasons previously stated.

*Casillas*, 580 F. Supp. at 245-46.

**Plaintiff's Equal Protection Claim**

Plaintiff also challenges New York's prohibition on Medicaid reimbursements for gender reassignment surgeries under the Equal Protection Clause of the Fourteenth

-17-

Amendment. It provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of laws." US. Const. amend. XIV, § 1. Plaintiff does not claim membership in any suspect or quasi-suspect class, nor does she contend that Medicaid's refusal to reimburse her for electrolysis and gender reassignment surgery implicates a fundamental right. Plaintiff asserts that she has been denied equal protection on the basis of her diagnosis, and acknowledges that her claim is subject to rational basis review. (Pl.'s Mem. 20.)

"[A] classification neither involving fundamental rights nor proceedings along suspect lines cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose." *Cent. State Univ. v. Am. Ass'n of Univ. Professors*, 526 U.S. 124, 127-28 (1999) (internal quotations omitted); *Heller v. Doe*, 509 U.S. 312, 319-21(1993); *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313-314 (1993); *Nordlinger v. Hahn*, 505 U.S. 1 (1992). Laws that neither involve a suspect class, nor implicate fundamental rights, are entitled to a strong presumption of validity. *Vacco v. Quill*, 521 U.S. 793, 799-800 (1997). "To uphold the legislative choice, a court need only find some reasonably conceivable state of facts that could provide a rational basis for the legislative action." *Molinari v. Bloomberg*, 564 F.3d 587, 608 (2d Cir. 2009) (internal quotations and citations omitted); *see also Heller*, 509 U.S. at 320. "A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Heller*, 509 U.S. at 320. "[C]ourts are compelled under rational-basis review to accep a legislature's generalizations even when there is an imperfect fit between

means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 321.

Plaintiff was mistaken when at oral argument she claimed that Commissioner Daines has the burden to demonstrate the law's rational basis.[16] "A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320. For the law to fail rational basis review, Plaintiff would have to establish § 505.2(l) has no rational relationship to any legitimate governmental purpose. *See Romer v. Evans*, 517 U.S. 620, 635 (1996). The legislative record for § 505.2(l) provides a sufficient rational basis for denying Plaintiff reimbursement for the treatments she seeks.

> Defendant Daines relies upon the statements accompanying the adoption of New York DOH's regulation, § 505.2(l), as providing a rational basis for excluding certain treatments for a diagnosis of GID.
>
> The state agency's assessment of public comment on the proposed regulation explained succinctly the reasons for denying reimbursement of gender reassignment surgeries and associated treatments. It cited "serious complications" from the surgeries and danger from life-long administration of estrogen. 20 N.Y. Reg. 5 (Mar. 25, 1998). This provided a more than sufficient rational basis which was related to legitimate government interests—*the health of its citizens and the conservation of limited medical resources*.

*Casillas*, 580 F. Supp. 2d at 247 (emphasis added). At oral argument, Plaintiff made much of the fact that New York's legislature has not reviewed § 505.2(l) since 1998.[17] Yet the mere passage of time is not a sufficient reason to find the law fails rational basis review.

---

[16] 3/5/09 Tr. 4:27p.m.

[17] 3/5/09 Tr. 4:08 p.m.

**CONCLUSION**

Accordingly, Defendant's Rule 12(c) motion for judgment on the pleadings is granted, and the case is dismissed, since Plaintiff has not stated a plausible ground for relief.

IT IS SO ORDERED.

Dated: July 17, 2009
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge